UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| DAVID DRAPER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 1:04-CV-167 |
| v. ) | |
| ) | Magistrate Judge Susan K. Lee |
| PEDRO BACON, individually and as a ) | |
| member of the Chattanooga, Tennessee Police ) | |
| Department; and the ) | |
| CITY OF CHATTANOOGA, TENNESSEE, ) | |
| ) | |
| Defendants. ) | |

## **M E M O R A N D U M**

This action arises out of an encounter involving Plaintiff David Draper ("Draper"), Defendant Chattanooga Police Officer Pedro Bacon ("Bacon"), and other law enforcement officers employed by Defendant City of Chattanooga ("the City") on the evening of June 9, 2003 shortly after the conclusion of an annual outdoor music festival held in Chattanooga, Tennessee (Court File No. 4, Amended Complaint). Draper alleges a variety of state law claims as well as federal claims under 42 U.S.C. §§ 1983, 1985, and 1988 against the defendants for injuries he received when officers arrested him near the intersection of Martin Luther King, Jr. Boulevard and Houston Street in Chattanooga.

This Court has jurisdiction over Draper's federal law claims pursuant to 28 U.S.C. § 1331 and may exercise supplemental jurisdiction over his state law claims pursuant to 28 U.S.C. § 1367. Upon the consent of the parties to the exercise of jurisdiction over this case by a United States Magistrate Judge, the action has been referred for all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73 (Court File No. 9).

Before the Court is a motion for summary judgment (Court File No. 14) filed by Bacon and the City. In resolving this motion, the Court has considered the Defendants' supporting brief and exhibits (*See* Court File No. 15). Draper has not responded to the motion. For the following reasons, the Court **WILL GRANT** the Defendants' motion for summary judgment (Court File No. 14) as to Draper's federal claims, **DECLINE** to exercise supplemental jurisdiction over his state law claims, and **DIRECT** the Clerk to close this case.

I.  **STANDARD OF REVIEW**

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Initially, the burden is on the moving party to conclusively show no genuine issues of material fact exist, *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003), and the Court must view the evidence and draw all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). However, the nonmoving party is not entitled to a trial merely on the basis of allegations, but must come forward with some significant probative evidence to support its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Id.* at 323, 106 S. Ct. at 2552.

The Court determines whether sufficient evidence has been presented to make an issue of

fact a proper jury question, but does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Weaver v. Shadoan*, 340 F.3d 398, 405 (6th Cir. 2003). The standard for summary judgment mirrors the standard for directed verdict. *Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511. The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52, 106 S. Ct. at 2512. There must be some probative evidence from which the jury could reasonably find for the nonmoving party. If the Court concludes a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Id.*; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## II. RELEVANT FACTS

As a preliminary matter, the Court notes again that Draper has not responded to the Defendants' motion. This is an unfortunate occurrence, because courts disfavor reviewing a dispositive motion without the benefit of the non-movant's interpretation of applicable case authority or indication of significant, supporting facts. Yet, it is not a court's responsibility to argue a party's position, and the parties must litigate their cases. The Eastern District of Tennessee has emphasized the importance of motions practice by enacting local rules that provide that: "Failure to respond to a motion may be deemed a waiver of any opposition to the relief sought." E.D.TN. L.R. 7.2. Courts hesitate to rely strictly on this type of rule, and in order to efficiently and fairly resolve the pending motion the Court has not relied upon any wavier by Plaintiff. Invariably,

though, the practical effect of failing to respond to a dispositive motion undermines the non-movant's case, and the Court was forced to decide this case without the benefit of Plaintiff's input. As a result, even though the Court has made every effort to view the record in the light most favorable to Plaintiff's case, the facts set forth herein are those in the record, which were presented by Defendants in support of their motion.

On June 9, 2003, Draper attended the Bessie Smith Strut ("the Strut"), an outdoor music festival on and around Martin Luther King, Jr. Boulevard between Market Street and University Avenue (Court File No. 14, part 5, Deposition of David Draper ("Draper Dep.") at 34; Court File No. 14, part 3, Affidavit of Officer Pedro Bacon ("Bacon Aff.") ¶ 3). During the Strut, law enforcement officers closed a portion of Martin Luther King, Jr. Boulevard and intersecting streets and treated the area as a public park where pedestrians were allowed to walk freely until the streets were reopened to vehicle traffic following the event (Bacon Aff. ¶ 3). Bacon was one of about fifty Chattanooga Police Department officers assigned to work crowd control duty for the Strut that evening (Bacon Aff. ¶¶ 2-3).[1] Before the Strut, officers were advised to anticipate the potential for some community unrest and hostility toward the police stemming from the recent shooting of a civilian by a police officer (Bacon Aff. ¶ 4). Officers were also briefed on the procedures and tactics for clearing Martin Luther King, Jr. Boulevard of pedestrians after the Strut so that the streets could be reopened to vehicle traffic (Bacon Aff. ¶ 5).

When the Strut concluded, police officers began to clear the streets of pedestrians (Bacon Aff. ¶ 6). During this process, some of the officers confronted a large group of young men wearing

---

[1] At this point in his career, Bacon was a School Resource Officer and was not a supervisor within the Chattanooga Police Department (Bacon Dep. at 75, 78; Bacon Aff. ¶ 17).

4

red shirts (Bacon Aff. ¶ 6). Some people in the crowd threw objects and yelled at the officers during the confrontation, and the group of young men briefly tried to overrun the officers before changing direction and moving away from Martin Luther King, Jr. Boulevard (Bacon Aff. ¶ 6). Shortly after this activity, at approximately 10:40 p.m., gunshots were fired in the area (Bacon Aff. ¶ 7). One person was killed and another was wounded (Bacon Aff. ¶ 7).

Meanwhile, Draper and his friends walked to the sidewalk at the intersection of Houston Street and Martin Luther King, Jr. Boulevard and stood in front of an establishment called The Local (Draper Dep. at 50). Draper, measuring 6'3" tall and weighing about 200 pounds, wore a red tank top and dark green shorts (Draper Dep. at 40). As Draper and his companions waited outside The Local, the line of police officers clearing the streets was gradually moving toward Draper's location (Draper Dep. at 50). Eventually the police line and an armored vehicle approached the intersection of Houston and Martin Luther King, and Draper and his friends stood on the sidewalk and watched (Draper Dep. at 51). Bacon, one of the officers clearing that portion of the street, noticed Draper in the crowed and watched Draper as he approached Draper's position (Bacon Aff. ¶ 8). Bacon heard and saw Draper directing curse words, obscenities, and obscene hand gestures at police officers and defying the officers' order to clear the area and to get out of the street (Bacon Aff. ¶ 8; Court File No. 14, part 6, Deposition of Pedro Bacon ("Bacon Dep.") at 70). Bacon identified Draper within the crowd due to his height and his actions, and Bacon testied Draper wore a red tank top and shorts (Bacon Aff. ¶ 8). Draper continued to yell obscenities and make obscene hand gestures as the officers approached him (Bacon Aff. ¶ 8). Another police officer, William Redman, observed the same appearance and conduct of Draper as Redman progressed with officers along Martin Luther King, Jr. Boulevard to clear the area of the Strut (Court File No. 14, part 4, Affidavit

5

of Officer William Redman ("Redman Aff.") ¶ 5).

When Bacon and other officers had progressed close enough to Draper's location, Bacon went to Draper on the sidewalk and placed him under arrest for disorderly conduct (Bacon Dep. at 70; Bacon Aff. ¶ 8; Redman Aff. ¶ 6). Draper resisted and struggled against being arrested by fighting and pulling away from Bacon (Bacon Aff. ¶ 9; Redman Aff. ¶ 6). Bacon struggled to control Draper's left side and another officer took control of Draper's right arm (Bacon Aff. ¶ 9). Draper continued to struggle, and eventually several officers took him to the ground (Bacon Aff. ¶ 9; Redman Aff. ¶ 6). Bacon and Redman believed it was clear Draper was under the influence of alcohol (Bacon Aff. ¶ 9; Redman Aff. ¶ 5); Draper drank up to two twelve-ounce cans of beer during the time he was at the Strut and prior to their encounter outside The Local (Draper Dep. at 35, 37, 39).

According to Draper, he was struck in the back of the head by a hard object and pushed forward into the street while he looked at the passing armored vehicle and before the officers arrested him (Draper Dep. at 51). As Draper was pushed forward, he started to turn his head back around and was struck in the face when he did that (Draper Dep. at 51). Then he was shoved to the ground (Draper Dep. at 51). While Draper was on the ground, officers placed their knees on Draper's back, struck him in the lower back and/or in the legs with an object, and held his head to the ground (Draper Dep. at 52-53). Draper then saw an white, male police officer place his face nose-to-nose with Draper's and yell obscenities at him (Draper Dep. at 52-53). Meanwhile, other officers directed Draper to get his hands out from underneath him while he was pinned to the ground (Draper Dep. at 53). They hit him, and finally they handcuffed him (Draper Dep. at 54). After Draper was handcuffed, officers stood him up and Bacon placed Draper in a police vehicle (Draper

6

Dep. at 55; Bacon Aff. ¶ 15).

Although Bacon approached Draper to arrest him for disorderly conduct, struggled to take control of him during the arrest, and eventually placed Draper in the police vehicle, Bacon did not strike Draper with a weapon or with his hands at any time (Bacon Dep. at 75-76; Bacon Aff. ¶ 11; Redman Aff. ¶ 7). Redman, who briefly assisted in the arrest of Draper by holding him on the ground with a side handled baton, did not see any officer strike Draper during the arrest (Redman Aff. ¶ 7). Neither did Bacon (Bacon Dep. at 76, 77-78). Beyond the race and sex of the officer who yelled in Draper's face while he was on the ground, Draper has not contradicted the testimony that Bacon did not strike Draper during the encounter (*see* Draper Dep. at 51-57). Specifically, Draper cannot say what Bacon did during the course of his arrest, but he did state Bacon was not the officer who yelled obscenities in his face while Draper was on the ground and that he did not know whether Bacon yelled any obscenities at him at all (Draper Dep. at 61-62).

Officers transported Draper to the jail, where Bacon asked Draper some questions (Draper Dep. at 56-57). Draper exhibited dizziness and nausea at the jail, so Bacon drove Draper to the hospital and waited with him there (Draper Dep. at 57-59). After Draper was treated and released, another officer transported Draper back to the jail (Bacon Aff. ¶ 15). Eventually, the charges against Draper were dismissed by the Hamilton County General Sessions Court (Bacon Aff. ¶ 10).

### III. DISCUSSION

A person may sue to vindicate the denial of his federal constitutional rights under 42 U.S.C. § 1983. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United

7

> States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983. To establish liability under 42 U.S.C. § 1983, a plaintiff must demonstrate: (1) he was deprived of a right secured by the Constitution or laws of the United States, and (2) that he was subjected or caused to be subjected to this deprivation by a person acting under color of state law. *Gregory v. Shelby County*, 220 F.3d 433, 441 (6th Cir. 2000).

A municipality cannot be held vicariously liable under § 1983 for the acts of its employees or agents. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Cherrington v. Skeeter*, 344 F.3d 631, 645 (6th Cir. 2003). Rather, municipal liability attaches only where a constitutional violation results from the "execution of a government's policy or custom." *Gregory*, 220 F.3d at 441. In order to establish a § 1983 claim against a municipality, a plaintiff must (1) identify conduct properly attributable to the municipality, and (2) "demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 404 (1997).

Inadequate police training may serve as the basis for municipal liability under § 1983, but "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). Therefore, "[t]o be actionable, a municipality's training must be inadequate to the tasks that its officers must perform, this inadequacy must be the product of deliberate indifference, and this inadequacy must have been closely related to or have actually caused the plaintiff's injury." *Cherrington*, 344 F.3d at 646 (citing *Russo v. City of Cincinnati*, 953 F.2d 1036, 1046 (6th Cir. 1992)). Courts have generally recognized two situations in which inadequate training may be found

to be the result of deliberate indifference: (1) failure to provide adequate training in light of foreseeable consequences that could result from a lack of such instruction (*e.g.*, failing to instruct officers in the use of deadly force); or (2) failure to act in response to repeated complaints of constitutional violations by officers. *Cherrington*, 344 F.3d at 646; *Brown v. Shaner*, 172 F.3d 927, 931 (6th Cir. 1999).

The City has presented evidence to show that it does not now, and did not during the relevant time period, have a custom or policy allowing its police officers to arrest or prosecute persons without probable cause or allowing officers to use excessive or unwarranted force on a person being taken into custody. (Court File No. 14, part 2, Affidavit of Lon Eilders ("Eilders Aff.") with exhibits). Further, the City's evidence indicates the City employs police officers who are properly trained and supervised, and its written polices on arrest procedures and the use of force are extensive. (Eilders Aff. ¶ 5 and exhibits at 6-27). By contrast, Draper has not presented evidence to show the City of Chattanooga had a custom or policy to cause the false arrest, false imprisonment, use of excessive force, or to otherwise violate Draper's constitutional rights, as he alleged in the Amended Complaint. Draper has not identified any conduct that is properly attributable to the City, nor has he submitted any evidence that would tend to demonstrate the City of Chattanooga engaged in *deliberate* conduct so as to show the City was the moving force behind the injuries he alleged. Furthermore, Draper has presented no evidence to show the City's training for police officers is inadequate in light of foreseeable consequences that could result, or that the City has failed to act upon any repeated complaints that officers commit constitutional violations. The Court will therefore grant summary judgment to the City of Chattanooga.

To the extent Draper alleges claims against Bacon in his official capacity as an officer of the

Chattanooga Police Department, summary judgment on these claims is appropriate as well. Claims against an officer in his official capacity are the equivalent of claims against the officer's employer. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Therefore, the Court will also grant summary judgment on the § 1983 claims against Bacon in his official capacity.

With regard to Draper's claims against Bacon in his individual capacity, the Court must first consider whether Draper, as a government official performing discretionary functions, is shielded from liability for civil damages under the circumstances of this case. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Three inquiries comprise this qualified immunity analysis: (1) whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiff show a constitutional violation occurred; (2) whether the violation involved a clearly established constitutional right of which a reasonable person would have known; and (3) whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights. *Radvansky v. City of Olmstead Falls*, 395 F.3d 291, 302 (6th Cir. 2005); *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003). Unless a plaintiff can establish each of these elements, qualified immunity will shield the defendant and the § 1983 claims against the individual officer must be dismissed. *Radvansky*, 395 F.3d at 302; *Williams ex rel. Allen v. Cambridge Bd. of Educ.*, 370 F.3d 630, 636 (6th Cir. 2004). Because Plaintiff has not established the elements within the qualified immunity analysis so as to show Bacon is not entitled to qualified immunity, the Court will grant Bacon's motion for summary judgment on Draper's federal claims against him in his individual capacity.

First, Draper claims Bacon arrested him without probable cause and that he used excessive force during the arrest, both in violation of the Fourth Amendment. Absent probable cause, an arrest

10

Case 1:04-cv-00167   Document 17   Filed 06/16/05   Page 10 of 14   PageID #: 62

violates the Fourth Amendment's prohibition against unreasonable seizures. *Thacker v. City of Columbus,* 328 F.3d 244, 255 (6th Cir. 2003); *Gardenhire v. Schubert*, 205 F.3d 303, 315 (6th Cir. 2000). Probable cause to arrest exists when the police have reasonably trustworthy information sufficient to warrant a prudent person in believing that a person has committed or is committing an offense. *Thacker*, 328 F.3d at 255; *Gardenhire*, 205 F.3d at 315. In assessing probable cause, one must examine all facts and circumstances within an officer's knowledge at the time of the arrest. *Thacker*, 328 F.3d at 255. Whether probable cause to arrest existed is a question of fact for the jury unless there is only one reasonable conclusion possible. *Id.*

According to the facts in the record, Bacon observed Draper defying the police officers' orders for the crowd to clear the streets as the officers progressed down Martin Luther King, Jr. Boulevard after the conclusion of the Strut. Bacon saw Draper make hand gestures and yell obscenities toward the officers during this time. Bacon's observations gave him probable cause to arrest Draper for disorderly conduct. Because the facts within Bacon's knowledge established probable cause to arrest Draper, Bacon did not violate Draper's constitutional right to be free from an unlawful arrest. Draper cannot defeat Bacon's claim of qualified immunity on this matter, so Bacon in his individual capacity is entitled to summary judgment on the § 1983 false arrest claim.

Likewise, Bacon is entitled to summary judgment on Draper's § 1983 excessive force claim. The Fourth Amendment proscribes a police officer's use of excessive force when seizing an individual. *Graham v. Conner*, 490 U.S. 386, 395 (1989) ("[A]ll claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard . . . ."). "A 'seizure' triggering the Fourth Amendment's protections

11

occurs only when government actors have, 'by means of physical force or show of authority, . . . in some way restrained the liberty of a citizen.'" *Id.* at 395 n.10 (internal citation omitted). Although Draper has testified he received blows and ill treatment from officers when he was being arrested, there is no evidence in the record that Bacon used or applied excessive force during Draper's arrest. *See Turner v. City of Taylor*, — F.3d — , No. 03-2636, slip op. at 10-11 (6th Cir. June 15, 2005) (recommended for full-text publication) (holding plaintiff's identification of onlooking officer only by rank designation on uniform was not sufficient to show one of named defendants holding that rank was that onlooking officer). Thus, Bacon is entitled to qualified immunity and summary judgment on Draper's § 1983 excessive force claim because the facts, even when viewed the in the light most favorable to Draper, do not show a constitutional violation under applicable law.

Next, Draper claims Bacon conspired with others to violate Draper's constitutional rights. Under 42 U.S.C. § 1985(3), private conspiracies are prohibited to deprive "any person or class of persons" of civil rights. *See, e.g.*, *Griffin v. Breckenridge*, 403 U.S. 88, 101-03 (1971); *Nelms v. Montgomery County Combined Health Dist.*, No. 90-3006, 1990 WL 153915, at *7 (6th Cir. Oct. 12, 1990). To state such a claim, Plaintiff must prove "(1) a conspiracy involving two or more persons, (2) for the purpose of depriving, directly or indirectly, a person or class of persons the equal protection of the laws and (3) an act in furtherance of that conspiracy (4) that causes injury to person or property, or a deprivation of a right or privilege of a United States citizen." *Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir. 1996) (citing *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994)). Plaintiff "must also show the conspiracy was motivated by racial, or other class based animus." *Collyer*, 98 F.3d at 233 (*citing Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263 (1993)).

The Court will grant Bacon's motion for summary judgment as to Draper's conspiracy claim because Draper has failed to present any evidence of a conspiracy between Bacon and another person, much less that Bacon or other officers were motivated by racial- or class-based animus or that anyone acted for the purpose of depriving Draper of his rights or privileges under law. Without such evidence, Draper cannot surmount the first element of the qualified immunity analysis and thus may not proceed on his claim that Bacon conspired against him as alleged in the Amended Complaint.

Draper also claims Bacon violated his right to be free from cruel and unusual punishment as recognized by the Eighth Amendment. However, where the alleged misconduct occurs prior to a civil rights plaintiff's conviction, the Eighth Amendment is not implicated. *Bass v. Robinson*, 167 F.3d 1041, 1048-49 (6th Cir. 1999); *see Ingraham v. Wright*, 430 U.S. 651, 671 n.40 (1977) ("Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions."). Accordingly, summary judgment for Bacon in his individual capacity is appropriate on this claim because the fact is clear that Draper had not been convicted at the time of the events underlying this claim for relief. *See Bass*, 167 F.3d at 1049.

In addition, Draper pursues a claim to recover damages as provided by 42 U.S.C. § 1988. Section 1988 permits the Court to allow a party to recover a reasonable attorney's fee if the party prevails in an action under 42 U.S.C. § 1983 and § 1985, among other statues. "[T]o qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim." *Farrar v. Hobby*, 506 U.S. 103, 111 (1992). Because responsibility for fees goes "hand-in-hand" with liability on the merits, *id.* at 110, Draper cannot recover attorney's fees from Bacon under

13

§ 1988 because he has not prevailed on his claims under § 1983 or § 1985.

Finally, Draper alleges a number of state law claims against the Defendants. Because Draper's federal claims will be dismissed by way of summary judgment, the Court will not exercise supplemental jurisdiction over his state law claims. "A district court has broad discretion in deciding whether to exercise supplemental jurisdiction over state law claims." *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996). In determining whether to exercise supplemental jurisdiction, courts must consider judicial economy, convenience, fairness, and comity. *Id.* "When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed." *Id.* at 1254-55. Accordingly, the Court will decline to exercise supplemental jurisdiction over Draper's state law claims against the Defendants and will direct the Clerk to **CLOSE** this case.

An Order shall enter.

                                                s/*Susan K. Lee*
                                                SUSAN K. LEE
                                                UNITED STATES MAGISTRATE JUDGE